**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 10-20076-01-KHV |
| ANTHONY M. YOUNG, JR., ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

## MEMORANDUM AND ORDER

On August 23, 2011, the Court sentenced defendant to 240 months in prison. On July 8, 2020, the Court dismissed defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because he had failed to exhaust administrative remedies. This matter is before the court on defendant's renewed Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A) (Doc. #858), which seeks release based on the Coronavirus Disease-2019 ("COVID-19") pandemic, and his Motion For Appointment Of Counsel (Doc. #859), both filed September 4, 2020. On September 17, 2020, pursuant to District of Kansas Standing Order No. 20-8, the Office of the Federal Public Defender notified the Court that it does not intend to enter an appearance to represent defendant. For reasons stated below, the Court dismisses defendant's motion for compassionate release and overrules his motion to appoint counsel.

## Factual Background

On January 26, 2011, a grand jury charged defendant with conspiracy to distribute 50 grams or more of cocaine base (Count 1), maintaining a drug-involved premises (Count 2) and six counts of distribution of cocaine base (Counts 7–9, 11, 13, 16). See Superseding Indictment (Doc. #187). On February 7, 2011, under Rule 11(c)(1)(C), Fed. R. Crim. P., defendant pled

guilty to Count 1 under a plea agreement which proposed a sentence of 240 months in prison and ten years of supervised release. See Plea Agreement Pursuant To Fed. R. Crim. P. 11(c)(1)(C) (Doc. #249) filed February 8, 2011, ¶ 3. At sentencing, the Court found that defendant was accountable for 3.5 kilograms of cocaine base for a base offense level of 36 under the United States Sentencing Guidelines ("U.S.S.G."), Section 2D1.1(c)(2). See Presentence Investigation Report ("PSR") (Doc. #319) filed May 16, 2011, ¶¶ 58, 64. The Court enhanced defendant's offense level two levels because of the nexus between a firearm and the offense, four levels because he was an organizer or leader in the criminal conduct that involved five or more participants and two levels because he used a minor to commit the offense or assist in avoiding detection of law enforcement. See id., ¶¶ 65, 67–68; U.S.S.G. §§ 2D1.1(b)(1), 3B1.1, 3B1.4. After a three-level reduction for acceptance of responsibility, defendant had a total offense level of 41 with a criminal history category IV for a guideline range of 360 months to life in prison. See id., ¶¶ 71-72, 107. On August 23, 2011, consistent with the recommended sentence in the plea agreement, the Court sentenced defendant to 240 months in prison and ten years of supervised release. See Judgment In A Criminal Case (Doc. #472) at 2–3.

Defendant currently is confined at FCI Gilmer, a Bureau of Prisons ("BOP") facility in Glenville, West Virginia. As of October 26, 2020, 19 inmates and three staff members had tested positive for Coronavirus Disease-2019 ("COVID-19"). See COVID-19 Cases, https://www.bop.gov/coronavirus/ (last visited Oct. 26, 2020). Sixteen of the 19 inmates and all of the staff members who tested positive have recovered. See id. No one at the facility has died from COVID-19. See id.

Defendant is 40 years old. Defendant states that because of hypertension, obesity, his

mental state and his race, he is at high risk of contracting COVID-19 and of severe illness or death if he contracts it. With good time credit, defendant's projected release date is December 29, 2027. Defendant asks the Court to grant compassionate release.

## **Analysis**

### I.      **Motion To Appoint Counsel**

Defendant asks the Court to appoint counsel to assist him with his compassionate release motion. Defendant has no constitutional or statutory right to appointment of counsel in the prosecution of a compassionate release motion. See Coronado v. Ward, 517 F.3d 1212, 1218 (10th Cir. 2008) (no constitutional right to counsel beyond direct appeal of criminal conviction); see also United States v. Campos, 630 F. App'x 813, 816 (10th Cir. 2015) (right to counsel does not extend to § 3582(c)(2) motion). In determining whether to appoint counsel, the Court considers several factors including (1) the merit of the litigant's claims; (2) the nature of the factual issues raised in the claims; (3) the litigant's ability to present his or her claims; and (4) the complexity of the claims involved. See Williams v. Meese, 926 F.2d 994, 996 (10th Cir. 1991). Applying these factors, defendant is not entitled to counsel. As explained below, defendant's claim lacks merit. In addition, defendant's claim for compassionate release is not particularly complex factually or legally. Finally, defendant appears able to adequately present his claim. For these reasons, the Court overrules defendant's motion to appoint counsel.

### II.     **Motion For Compassionate Release**

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so. See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). Congress has set forth only three limited circumstances in which a

court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c).

Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, the Court may order compassionate release for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Defendant seeks compassionate release because of various health conditions and the COVID-19 pandemic. For reasons stated below, the Court lacks jurisdiction because (1) defendant has not exhausted administrative remedies and (2) he has not established extraordinary and compelling reasons for his release.

A. Exhaustion Of Administrative Remedies

The Court may entertain requests for compassionate release only upon a motion of the BOP or of defendant after he submits a request to BOP and the earlier of (1) when he "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A). As to the second alternative, a "lapse" refers to the failure of the warden to respond to defendant's request. United States v. McIntosh, No. 11-20085-01-KHV, 2020 WL 5747921, at *2 (D. Kan. Sept. 25, 2020); see also *lapse*, Black's Law Dictionary 885 (7th ed. 1999) (lapse is "termination of a right or privilege because of a failure to exercise it within some time limit or because a contingency has occurred or not occurred"). In other words, if the warden responds to a request within 30 days, defendant must fully exhaust available administrative appeals before filing a motion in district court. See McIntosh, 2020 WL 5747921, at *2.

-4-

The administrative exhaustion requirement in Section 3582(c)(1)(A) is jurisdictional. United States v. Scott, No. 16-10003-02-EFM, 2020 WL 5513616, at *1 (D. Kan. Sept. 14, 2020); see United States v. Read-Forbes, 454 F. Supp. 3d 1113, 1117 (D. Kan. 2020) (analyzing "text, context, and relevant historical treatment" of Section 3582(c)) (quoting Musacchio v. United States, 136 S. Ct. 709, 717 (2016)).  Defendant has not alleged that he has satisfied the exhaustion prerequisite, but his motion includes a copy of the warden's denial of his written request for compassionate release.  See Inmate Request To Staff Member Response (Doc. #858-1). Defendant does not assert that the warden failed to respond within 30 days of his request.  In the denial letter, the warden advised defendant that he had the right to file an administrative appeal, but he did not do so.  Instead, on September 4, 2020, defendant filed a motion for compassionate release.  Because defendant does not allege that the warden failed to respond within 30 days of his request and he did not appeal the warden's denial of his request, he has not shown that he has fully exhausted all administrative appeal rights.  Accordingly, the Court lacks jurisdiction to consider his motion for compassionate release.

Even if the Court construed the administrative exhaustion requirement of Section 3582(c)(1)(A) as a claims-processing rule rather than a jurisdictional limitation, the statutory rule would still bar defendant's motion at this time.  See Read-Forbes, 454 F. Supp. 3d at 1117.  In contrast with judicially created exhaustion requirements, the Court lacks discretion to excuse defendant's failure to comply with a mandatory statutory requirement to exhaust administrative remedies.  See id.  The COVID-19 pandemic is no exception.  See id.

Whether the exhaustion requirement is jurisdictional or a claims-processing rule, sound policy reasons support the requirement that defendant must first present to the BOP his request for

a reduced sentence.  The exhaustion requirement helps prevent premature claims and ensures that the agency which possesses the most expertise is given the first shot at resolving defendant's request.  See Forest Guardians v. U.S. Forest Serv., 641 F.3d 423, 431 (10th Cir. 2011); see also United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("Given BOP's shared desire for a safe and healthy prison environment, . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance.").  Because defendant is in BOP custody, the BOP is in a better position to initially determine his medical needs, his specific risk of COVID-19 and the risk to inmates generally at FCI Gilmore, the risk to the public if he is released and whether his release plan is adequate.  See Read-Forbes, 454 F. Supp. 3d at 1118.  Likewise, the BOP is in a better position to coordinate any request for relief under Section 3582(c)(1)(A) with the exercise of its discretion to place a prisoner in home confinement under 18 U.S.C. § 3624(c)(2).

B.  Extraordinary And Compelling Reasons For Release

Even if defendant had exhausted administrative remedies, he has not shown "extraordinary and compelling reasons" for release.  Under the compassionate release statute, after considering the applicable factors set forth in Section 3553(a), the Court may grant relief if defendant establishes that (1) "extraordinary and compelling reasons" warrant a reduced sentence and (2) a reduced sentence is "consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Congress specifically authorized the Sentencing Commission to issue policy statements defining "what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied."  United States v. Saldana, 807 F. App'x 816, 819 (10th Cir. 2020) (quoting 28 U.S.C. § 994(t)).

The Sentencing Commission has identified four reasons that may constitute grounds for

compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) as determined by the Director of the BOP, an "extraordinary and compelling reason other than, or in combination with," the first three categories. U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018).[1]  In addition, the policy statement requires that before granting

---

[1] Application Note 1 provides as follows:

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—
   (i)  The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory).  A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

   (ii)  The defendant is—
      (I)  suffering from a serious physical or medical condition,
      (II)  suffering from a serious functional or cognitive impairment, or
      (III)  experiencing deteriorating physical or mental health because of the aging process,
   that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B) Age of the Defendant.—The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C) Family Circumstances.
   (i)  The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(continued . . .)

relief, the Court must find that defendant "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2) (citing 18 U.S.C. § 3142(g)). In December of 2018, the First Step Act amended Section 3582(c)(1)(A) to permit defendants (rather than only the BOP) to file motions for compassionate release. The Sentencing Commission's policy statement, which was effective November 1, 2018, nonetheless remains the relevant policy statement in determining whether "extraordinary and compelling reasons" warrant defendant's release. See Saldana, 807 F. App'x at 819 (applying policy statement effective November 1, 2018 to defense motion under Section 3582(c)(1)(A)). Unless the grounds for resentencing fall within one of the specific categories that Congress has authorized under Section 3582(c), the Court lacks jurisdiction to consider defendant's request. See id.; United States v. Brown, 556 F.3d 1108, 1113 (10th Cir. 2009).

Here, defendant seeks compassionate release based in part on his medical conditions and the risk that he will contract COVID-19 at FCI Gilmore. The government concedes that a medical condition that elevates an inmate's risk of becoming seriously ill if he contracts COVID-19 may constitute an extraordinary and compelling reason for release. See Government's Response To

---

[1](. . . continued)

> (ii)   The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D)   Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, cmt. n.1 (Nov. 2018).

Defendant's Motion For Compassionate Release (Doc. #862) at 12–13.  The government argues that medical conditions such as hypertension during the COVID-19 pandemic satisfy the criteria under subsection (A) of the Section 1B1.13 commentary, i.e. a chronic condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  Id. at 13 (quoting U.S.S.G. § 1B1.13, cmt. n.1(A)).  Here, subsection (A) does not apply because unless and until defendant contracts COVID-19, his medical conditions do not limit his ability to provide self-care within the prison environment.  Subsections (B) and (C) also do not apply.  See U.S.S.G. § 1B1.13, cmt. n.1(B) (defendant must be at least 65 years old to qualify for relief based on age); id., cmt. n.1(C) (relief based on death or incapacitation of caregiver of minor child or incapacitation of spouse where defendant would be only available caregiver).  Accordingly, for defendant to establish extraordinary and compelling reasons for release based on his medical conditions and the risk of contracting COVID-19, he must rely on the catchall provision of subsection (D).

Under subsection (D) of the Section 1B1.13 commentary, as determined by the Director of the BOP, release may be appropriate based on other "extraordinary and compelling reason[s]," by themselves or in combination with defendant's medical condition, age and family circumstances.  U.S.S.G. § 1B1.13, cmt. n.1(D).  To determine whether defendant presents other extraordinary and compelling reasons for release, the BOP has identified several "nonexclusive factors" to consider: defendant's criminal and personal history, the nature of his offense, disciplinary infractions, length of sentence and amount of time served, current age and age at the time of offense and sentencing, release plans and whether release would "minimize the severity of the offense."  Saldana, 807 F. App'x at 819 (quoting BOP Program Statement 5050.50 at 12 (2019)).  Where

the BOP Program statement is a "permissible construction of the statute," it is entitled to "some deference." Id. (quoting Reno v. Koray, 515 U.S. 50, 61 (1995)).

As explained above, the First Step Act permits defendants (rather than only the BOP) to file motions for compassionate release. The Sentencing Commission, however, which has lacked a quorum since the First Step Act was enacted in December of 2018, has not amended the Section 1B1.13 commentary which includes the catchall provision for other extraordinary and compelling reasons "[a]s determined by the Director of the BOP." U.S.S.G. § 1B1.13, cmt. n.1(D). In an unpublished decision, the Tenth Circuit implicitly recognized that in addition to the BOP, courts now can make such a determination. See Saldana, 807 F. App'x at 819–20.[2] The Court likewise concludes that on a defense motion, it may—independently of the BOP—determine whether defendant has established "other" extraordinary and compelling reasons that warrant a reduced sentence beyond those stated in subsections (A) to (C) of the Section 1B1.13 commentary. U.S.S.G. § 1B1.13, cmt. n.1(D); see McIntosh, 2020 WL 5747921, at *5; see also 28 U.S.C. § 994(t) (Sentencing Commission shall describe what should be considered extraordinary and compelling reasons including criteria to apply and list of specific "examples"); cf. United States v. Brooker, No. 19-3218-CR, --- F.3d ----, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020) (because Section 1B1.13 not "applicable" to compassionate release motions brought by

---

[2]  In Saldana, defendant argued that in determining whether he had established other compelling reasons under the catchall provision of subsection (D), the district court should have considered (1) his post-conviction rehabilitation efforts and (2) post-sentencing case law that would have lowered his sentencing range. See id. In affirming the district court's decision to deny defendant's request for a reduced sentence under the catchall provision of subsection (D), the Tenth Circuit implicitly assumed that the district court, rather than the BOP exclusively (as the commentary suggests), can determine whether a defendant has established "other" extraordinary and compelling reasons under the catchall provision. See id.

defendants, Application Note 1(D) cannot constrain district court discretion to consider whether any reasons extraordinary and compelling).

In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent." United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting *extraordinary*, Webster's Third International Dictionary, Unabridged (2020)). "Compelling" means "tending to convince . . . by forcefulness of evidence." Id. (quoting *compelling*, Webster's Third International Dictionary, Unabridged (2020)). As noted above, BOP Program Statement 5050.50 identifies several "nonexclusive" factors for the Court to consider in determining whether "other" extraordinary and compelling reasons warrant a reduced sentence. See Saldana, 807 F. App'x at 819.

Here, defendant seeks release because of his medical conditions, mental state and race. At age 40, defendant is relatively young. The PSR notes that in 2011, defendant reported no known diseases, disabilities or history of mental or emotional problems. PSR (Doc. #319), ¶¶ 96–97. BOP records reflect that defendant takes medication for hypertension, but a recent examination reflected regular heart rate and rhythm with no abnormal heart sounds. Reply (Doc. #872) filed October 26, 2020 at 2–3. Defendant also has hyperlipidemia, an unspecified metabolic disorder and prediabetes, but he has not shown that these conditions affect his risk of contracting COVID-19 or suffering severe illness should he contract it. See Government's Response To Defendant's Motion For Compassionate Release (Doc. #862) at 14. Defendant states that he is obese, but the BOP medical records he has submitted do not indicate his height or weight, or that a medical provider has classified him as obese. In 2011, defendant was 5 feet, 11 inches, and weighed 185 pounds, with a Body Mass Index ("BMI") of approximately 26. See PSR (Doc. #319), ¶ 95.

The National Institute of Health classifies a BMI between 25 and 29.9 as "overweight," not obese. See Connor B. Weir & Arif Jan, BMI Classification Percentile And Cut Off Points, NCBI (July 10, 2020), https://www.ncbi.nlm.nih.gov/books/NBK541070 (last visited Oct. 27, 2020). Combined with his other medical conditions, defendant has not shown that being overweight is an extraordinary and compelling reason for release. Defendant also seeks release in part based on his mental state, but he has not shown that he has any mental or emotional health condition.

Defendant maintains that as an African-American, his race may elevate the risk of contracting COVID-19 and suffering severe illness. See Motion For Compassionate Release (Doc. #858) at 1. While African-Americans have suffered a disproportionately high rate of hospitalizations and deaths from COVID-19 compared to the overall population, race itself generally is not considered a risk factor. See United States v. Beasley, No. 13-10112-3-JTM, 2020 WL 5077383, at *1 (D. Kan. Aug. 27, 2020) (statistics show COVID-19 disproportionately affects African-Americans, but explanation may be that African-Americans disproportionately have underlying medical conditions which render virus dangerous); United States v. Myers, No. 18-20633, 2020 WL 4934343, at *3 (E.D. Mich. Aug. 24, 2020) (inmate's race itself does not constitute risk factor for COVID-19 in same way as underlying medical condition does); United States v. Green, Crim. No. 05-205, 2020 WL 3642860, at *4 (W.D. Pa. July 6, 2020) (unclear whether race is independent risk factor or whether adverse outcomes caused by other factors such as living conditions, work conditions, lack of access to health care or other underlying medical conditions).

Defendant has not shown that compared to his proposed placement in the community, he faces a heightened or imminent risk of exposure to COVID-19 at FCI Gilmore. See United States

v. Wright, No. CR-TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19 and high risk for death or serious illness should he or she contract COVID-19 based on age, medical conditions or other factors).  Defendant's medical conditions, his mental state, his race and the conditions at FCI Gilmore, individually and collectively, do not constitute extraordinary and compelling reasons for his release.  Likewise, defendant has not established that the nonexclusive factors in BOP Program Statement 5050.50 compel his release.   COVID-19 certainly presents a challenge in the prison setting, where inmates generally live in close quarters.  Even so, the risk that COVID-19 may spread further at FCI Gilmore cannot "justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."  Raia, 954 F.3d at 597.

Even if defendant's medical conditions, his mental state, his race, the conditions at FCI Gilmore and the COVID-19 pandemic were considered "extraordinary and compelling" reasons for release, the Court would deny relief after considering the various factors under 18 U.S.C. § 3553.  A sentence of time served, or approximately 145 months including good time credit, is inconsistent with the seriousness of defendant's offense, the need for deterrence and the need to protect the public.   In particular, defendant committed a significant drug trafficking offense.   As part of the offense conduct, defendant was responsible for more than 3.5 kilograms of cocaine base and had a significant leadership role in the drug trafficking conspiracy.  See PSR (Doc. #319), ¶¶ 58, 64, 67.   The Court also found a nexus between a firearm and defendant's offense conduct and that he used a minor to commit the offense or assist in avoiding detection of law enforcement. See id., ¶¶ 65, 68.   Finally, a reduction of defendant's sentence to approximately 145 months including good time credit, would reflect a significant disparity from his current sentence of

240 months, which was well below the low end of his guideline range of 360 months to life.

The Court recognizes that defendant has participated in a number of BOP programs. He apparently has made progress toward rehabilitation. Even so, on balance, the factors under Section 3553(a) do not support a reduced sentence.

In sum, defendant's medical conditions, his mental state, his race, the conditions at FCI Gilmore and the ongoing COVID-19 pandemic are not "extraordinary and compelling" reasons that warrant his release under Section 3582(c)(1)(A). Therefore, the Court dismisses defendant's motion for release for lack of jurisdiction. See Saldana, 807 F. App'x at 818, 820–21 (because district court found that defendant had not established "extraordinary and compelling reasons" for reduced sentence, it should have dismissed motion for lack of jurisdiction).

**IT IS THEREFORE ORDERED** that defendant's renewed Motion For Compassionate Release Pursuant To 18 U.S.C. § 3582(c)(1)(A) (Doc. #858) filed September 4, 2020 is **DISMISSED for lack of jurisdiction**.

**IT IS FURTHER ORDERED** that defendant's Motion For Appointment Of Counsel (Doc. #859) filed September 4, 2020 is **OVERRULED**.

Dated this 30th day of October, 2020 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge