## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | )     **CRIMINAL ACTION** |
| v. | ) |
| | )     **No. 10-20076-01-KHV** |
| ANTHONY M. YOUNG, JR., | ) |
| | ) |
| Defendant. | ) |
| | ) |

### MEMORANDUM AND ORDER

On August 23, 2011, the Court sentenced defendant to 240 months in prison. On July 8, 2020, the Court dismissed defendant's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) because he had failed to exhaust administrative remedies. See Memorandum And Order (Doc. #853) at 3–5. On October 30, 2020, the Court dismissed defendant's second motion for compassionate release because he had failed to exhaust administrative remedies and had not shown extraordinary and compelling reasons for release. See Memorandum And Order (Doc. #873) at 5, 13. This matter is before the court on defendant's renewed Motion For Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A) (Doc. #887) filed March 16, 2021, which again seeks release based on the Coronavirus Disease-2019 ("COVID-19") pandemic. On March 19, 2021, pursuant to District of Kansas Standing Order No. 20-8, the Office of the Federal Public Defender ("FPD") notified the Court that it does not intend to enter an appearance to represent defendant. For reasons stated below, the Court sustains in part defendant's motion for compassionate release and reduces his sentence to 196 months.

### Factual Background

On January 26, 2011, a grand jury charged defendant with conspiracy to distribute

50 grams or more of cocaine base (Count 1), maintaining a drug-involved premises (Count 2) and six counts of distribution of cocaine base (Counts 7–9, 11, 13, 16).   See Superseding Indictment (Doc. #187).   On February 7, 2011, under Rule 11(c)(1)(C), Fed. R. Crim. P., defendant pled guilty to Count 1 under a plea agreement which proposed a sentence of 240 months in prison and ten years of supervised release.   See Plea Agreement Pursuant To Fed. R. Crim. P. 11(c)(1)(C) (Doc. #249) filed February 8, 2011, ¶ 3.   At sentencing, the Court found that defendant was accountable for 3.5 kilograms of cocaine base for a base offense level of 36 under the United States Sentencing Guidelines ("U.S.S.G."), Section 2D1.1(c)(2).   See Presentence Investigation Report ("PSR") (Doc. #319) filed May 16, 2011, ¶¶ 58, 64.   The Court enhanced defendant's offense level two levels because of the nexus between a firearm and the offense, four levels because he was an organizer or leader in the criminal conduct that involved five or more participants and two levels because he used a minor to commit the offense or assist in avoiding detection of law enforcement.   See id., ¶¶ 65, 67–68; U.S.S.G. §§ 2D1.1(b)(1), 3B1.1, 3B1.4.   After a three-level reduction for acceptance of responsibility, defendant had a total offense level of 41 with a criminal history category IV for a guideline range of 360 months to life in prison.   See id., ¶¶ 71–72, 107. On August 23, 2011, consistent with the recommended sentence in the plea agreement, the Court sentenced defendant to 240 months in prison and ten years of supervised release.   See Judgment In A Criminal Case (Doc. #472) at 2–3.

Defendant currently is confined at FCI Gilmer, a Bureau of Prisons ("BOP") facility in Glenville, West Virginia.   FCI Gilmer houses some 1,509 inmates.   See FCI Gilmer, https://www.bop.gov/locations/institutions/gil (last visited May 18, 2021).   As of May 18, 2021, 298 inmates and 72 staff members had tested positive for Coronavirus Disease-2019 ("COVID-

19").   See COVID-19 Cases, https://www.bop.gov/coronavirus (last visited May 18, 2021).   One

inmate at the facility died from COVID-19.   See id.   The remaining 297 inmates and 70 of the

72 staff members who tested positive have recovered.   See id.   As of May 18, 2021, 942 inmates

including defendant and 140 staff members have received full inoculations of a COVID-19

vaccine.   See id.

Defendant is 40 years old.   Defendant states that because of obesity, hypertension,

prediabetes, metabolic disorder and hyperlipidemia, he is at high risk of contracting COVID-19

and of severe illness or death if he contracts it or one of its variants.   With good time credit,

defendant's projected release date is December 29, 2027.   Defendant asks the Court to grant

compassionate release.

## Analysis

A federal district court may modify a defendant's sentence only where Congress has

expressly authorized it to do so.   See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d

945, 947 (10th Cir. 1996).   Congress has set forth only three limited circumstances in which a

court may modify a sentence: (1) upon motion of the BOP Director or defendant under

Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal

Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing

range that has subsequently been lowered by the Sentencing Commission."   18 U.S.C. § 3582(c).

Under the First Step Act of 2018, Pub. L. No. 115-391 (S. 756), 132 Stat. 5194, the Court

may order compassionate release for "extraordinary and compelling reasons."   18 U.S.C.

§ 3582(c)(1)(A)(i).   Defendant seeks compassionate release because of various health conditions

and the COVID-19 pandemic.   The parties agree that defendant has exhausted administrative

remedies.   Under the compassionate release statute, the Court may grant relief if defendant establishes that (1) extraordinary and compelling reasons warrant a reduced sentence, (2) a reduced sentence is consistent with applicable Sentencing Commission policy statements and (3) the Section 3553(a) factors warrant a reduced sentence.   18 U.S.C. § 3582(c)(1)(A); United States v. Maumau, 993 F.3d 821, 831 (10th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1042–43 (10th Cir. 2021).   The Sentencing Commission has not issued an "applicable" policy statement for motions for compassionate release filed by defendants.   Maumau, 993 F.3d at 837; McGee, 992 F.3d at 1050.   Unless and until the Sentencing Commission issues such a policy statement, the second requirement does not apply.   See United States v. Warren, No. 11-20040-01-WPJ, 2021 WL 1575226, at *2 (D. Kan. Apr. 22, 2021); see also United States v. Jones, 980 F.3d 1098, 1111 (6th Cir. 2020) (where incarcerated person files motion, district court may skip step two of § 3582(c)(1)(A) inquiry and has full discretion to define "extraordinary and compelling" without consulting policy statement at U.S.S.G. § 1B1.13).   Accordingly, the Court evaluates only the first and third requirements.

## I.     Extraordinary And Compelling Reasons For Release

The Court has discretion to independently determine whether a defendant has shown "extraordinary and compelling reasons" that warrant release.   See McGee, 992 F.3d at 1044, 1048.   In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent."   United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting extraordinary, Webster's Third International Dictionary, Unabridged (2020)).   "Compelling" means "tending to convince . . . by forcefulness of evidence."   Id. (quoting compelling, Webster's Third International Dictionary, Unabridged (2020)).   The Court

also considers how the Sentencing Commission has defined extraordinary and compelling reasons for BOP motions.   See United States v. Carr, No. 20-1152, 2021 WL 1400705, at *4 (10th Cir. Apr. 14, 2021) (district court has discretion to consider definition of extraordinary and compelling reasons in Section 1B1.13 application notes).   For BOP motions, the Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) a catchall category for an "extraordinary and compelling reason other than, or in combination with," the first three categories.   U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018).

Here, defendant seeks release in part because of his health conditions.   At age 40, defendant is young.   The government concedes that under Department of Justice guidelines, defendant's health conditions establish extraordinary and compelling reasons.   Even so, the Court finds that defendant's health conditions and the conditions at FCI Gilmore, individually and collectively, do not constitute extraordinary and compelling reasons for a reduced sentence.   BOP records reflect that defendant takes medication for hypertension, but a physical examination last year reflected regular heart rate and rhythm with no abnormal heart sounds.   Reply (Doc. #872) filed October 26, 2020 at 2–3.   Defendant also has hyperlipidemia, an unspecified metabolic disorder and prediabetes, but he has not shown that these conditions affect his risk of contracting COVID-19 or suffering severe illness should he contract it.   Defendant states that he is obese, but the BOP medical records do not indicate his height or weight, or that a medical provider has classified him as obese.   In 2011, defendant was 5 feet, 11 inches, and weighed 185 pounds, with a Body Mass Index ("BMI") of approximately 26.   See PSR, ¶ 95.   The National Institute of

Health classifies a BMI between 25 and 29.9 as "overweight," not obese.  <u>See</u> Connor B. Weir &

Arif Jan, <u>BMI Classification Percentile And Cut Off Points</u>, NCBI (July 10, 2020),

https://www.ncbi.nlm.nih.gov/books/NBK541070 (last visited May 12, 2021).  While

defendant's health conditions may slightly elevate his risk of contracting COVID-19 or of severe

illness if he contracts it, defendant has not shown that his conditions, either individually or

collectively, constitute extraordinary and compelling reasons for release.

  Nearly two thirds of the inmates at FCI Gilmore are fully inoculated with a COVID-19

vaccine.  Defendant, who has received a vaccine, has not shown that compared to his proposed

placement in the community, he faces a heightened or imminent risk of exposure to COVID-19 or

one of its variants at FCI Gilmore.  <u>See</u> <u>United States v. Wright</u>, No. CR-TDC-17-0388, 2020 WL

2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19

and high risk for death or serious illness should he or she contract COVID-19 based on age,

medical conditions or other factors).  COVID-19 certainly presents a challenge in the prison

setting, where inmates generally live in close quarters.  Even so, the risk that COVID-19 or a

variant that is resistant to the vaccine may emerge at FCI Gilmore cannot "justify compassionate

release, especially considering BOP's statutory role, and its extensive and professional efforts to

curtail the virus's spread."  <u>United States v. Raia</u>, 954 F.3d 594, 597 (3d Cir. 2020).

  Defendant next argues that extraordinary and compelling reasons exist because if sentenced

today and if the Court only attributes to him the amount of cocaine base charged in the indictment,

he would likely receive a sentence lower than 240 months.  <u>See</u> <u>Reply</u> (Doc. #895) at 3; <u>Motion</u>

<u>For Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)</u> (Doc. #887) at 2 (sentence for non-

violent drug offense "went way beyond Congressional intent as the law stands today").  Even

under current law, however, the Court can find defendant personally accountable for a quantity of controlled substances that is higher than the threshold amount charged in the indictment.   See United States v. Foy, 700 F. App'x 875, 876–77 (10th Cir. 2017) (well-established that in calculating base offense level, court may look beyond indictment and consider quantities not alleged provided drugs part of same course of conduct or common scheme or plan as offense of conviction) (citing United States v. Foy, 641 F.3d 455, 469 (10th Cir. 2011)).   Also, defendant's sentencing range has not changed.   On account of Amendment 782 to the Sentencing Guidelines, defendant's total offense level is reduced two levels, to a total of 39 under the amended Guidelines. See U.S.S.G. § 2D1.1(c)(3) (Nov. 1, 2018 ed.) (base offense level 34 for at least 2.8 kilograms but less than 3.5 kilograms of cocaine base), U.S.S.G. § 2D1.1(b)(1) (two levels because defendant possessed firearm); U.S.S.G. § 3B1.1 (four levels because defendant was organizer or leader); U.S.S.G. § 3B1.4 (two levels because defendant used minor to commit offense); U.S.S.G. § 3E1.1 (three levels deducted for acceptance of responsibility).   Even so, with a criminal history category of IV, defendant's guideline range remains the same: 360 months to life in prison. Defendant has not shown that his sentencing exposure today would be materially different than when the Court sentenced him in 2011.

Defendant also argues that the First Step Act of 2018 ("FSA-2018") changed his statutory sentencing range.   Effective August 3, 2010, Section 2 of the Fair Sentencing Act of 2010 ("FSA-2010"), Pub. L. No. 111-220; 124 Stat. 2372, increased the amount of cocaine base needed to trigger certain statutory minimum and maximum sentences.   In particular, the FSA-2010 raised from 50 to 280 grams the amount of cocaine base needed to trigger the statutory range in Section 841(b)(1)(A)(iii), i.e. 20 years to life with a prior qualifying conviction.   See 21 U.S.C.

§ 841(b)(1)(A)(iii).   The FSA-2010 also raised from five to 28 grams the amount of crack cocaine needed to trigger the statutory range in Section 841(b)(1)(B)(iii), i.e. 10 years to life with a prior qualifying conviction.   See 21 U.S.C. § 841(b)(1)(B)(iii).   After the FSA-2018 retroactively applied the revised statutory penalties of the FSA-2010, and in light of defendant's qualifying conviction, his statutory range now is to ten years to life.   See 21 U.S.C. § 841(b)(1)(B) (penalty for 28 grams or more of cocaine base with prior conviction for serious drug or violent felony).   Because defendant's amended guideline range of 360 months to life falls entirely within the revised statutory range of ten years to life, it does not appear that he would be entitled to relief under the FSA-2018.

While defendant's stated reasons do not constitute extraordinary and compelling reasons for a reduced sentence, the Court finds that the relief granted to co-defendants under Section 404 of the FSA-2018 constitutes an extraordinary and compelling reason for relief.   In February of 2019, as to three co-defendants who also pled guilty (Jerome Kelley, Ronald Carrington and Lawrence Washington, Jr.), the Court granted relief under the FSA-2018 and reduced their offense levels by either two or three levels.   See Order For Sentence Reduction [As To Jerome Kelley] Pursuant To Section 404 Of The First Step Act Of 2018 (Doc. #748) filed February 5, 2019 (reducing sentence from 151 months to time served); Order For Sentence Reduction [As To Ronald Carrington] Pursuant To Section 404 Of The First Step Act Of 2018 (Doc. #749) filed February 5, 2019 (reducing sentence from 170 months to time served); Order For Sentence Reduction [As To Lawrence Washington, Jr.] Pursuant To Section 404 Of The First Step Act Of 2018 (Doc. #747) filed February 5, 2019 (reducing sentence from 168 months to 130 months).   In contrast to the three co-defendants, the FPD has not filed a request for relief for defendant under

-8-

Section 404(b) of the FSA-2018. As explained above, the FSA-2018 reduced defendant's statutory minimum from 20 years to 10 years. Even so, defendant pled guilty under a Rule 11(c)(1)(C) agreement with a proposed sentence of 240 months and his guideline range of 360 months to life remains the same under the FSA-2018. The Court finds that the uneven application of the FSA-2018 to the various defendants in the conspiracy is an extraordinary and compelling reason to reduce defendant's sentence.

## II.    Section 3553(a) Factors

Defendant argues that the factors under 18 U.S.C. § 3553(a) warrant a sentence of time served (approximately 152 months including good time credit). The Court finds that a timed served sentence is inconsistent with the seriousness of defendant's offense, the need for deterrence and the need to protect the public. In particular, defendant committed a significant drug trafficking offense. As part of the offense conduct, defendant was responsible for 3.5 kilograms of cocaine base and had a significant leadership role in the drug trafficking conspiracy. See PSR, ¶¶ 58, 64, 67. The Court also found a nexus between a firearm and defendant's offense conduct and that he used a minor to commit the offense or assist in avoiding detection of law enforcement. See id., ¶¶ 65, 68. Finally, a reduction of defendant's sentence to approximately 152 months, including good time credit, would reflect a significant disparity from his current sentence of 240 months, which was well below the low end of his guideline range of 360 months to life. The Court recognizes that defendant apparently has made progress toward rehabilitation. Even so, on balance, the factors under Section 3553(a) do not support a sentence of timed served.

Even though a time served sentence is not appropriate, the Court considers the reduced sentences of co-defendants Kelley, Carrington and Washington under Section 404 of the FSA-

-9-

2018, which reflect either a two or three level decrease in their offense levels.   Originally, defendant had a guideline range of 360 months to life.   The Court sentenced defendant to 240 months, that is 75 per cent of the low end of the guideline range, which at the time also was the statutory minimum.   As explained above, defendant's statutory minimum now is 120 months. After Amendment 782 and reducing defendant's offense level three additional levels based on the reduced sentences of co-defendants under Section 404(b) of the FSA-2018, the Court considers a revised guideline range of 262 to 327 months (offense level 36, criminal history IV).   A sentence of 75 per cent of the low end of the revised guideline range, the same proportionate reduction from the low end of the guideline range as the Court applied at sentencing, would be 196 months.

The Court finds that a reduced sentence of 196 months is sufficient, but not greater than necessary, to reflect the seriousness of the offense, afford adequate deterrence, protect the public and provide defendant needed treatment in the most effective manner.   See 18 U.S.C. § 3553(a)(2)(A)–(D).   Such a reduction is particularly appropriate in light of the relief that the Court awarded to co-defendants under Section 404 of the FSA-2018 and the reduction of the statutory minimum in defendant's case.[1]   Defendant completed his GED while in prison and has

---

[1]       In this order, the Court does not (1) impose or reduce defendant's sentence under the amendments in Sections 2 and 3 of the FSA-2010 or (2) deny relief under Section 404 of the FSA-2018.   United States v. Mannie, 971 F.3d 1145, 1152 (10th Cir. 2020) (citing FSA-2018, § 404(c)).   While the Court assumes that defendant ultimately would not obtain relief under Section 404 of the FSA-2018, it declines to construe defendant's pro se motion as a request for relief under that statutory provision.   Under District of Kansas Standing Order No. 18-4, the Court has not notified the FPD that it construes defendant's present motion for compassionate release as a request for relief under Section 404 of the FSA-2018.   The FPD should have the opportunity to review defendant's eligibility for relief and determine whether to represent defendant on a motion under that specific statutory provision.   Except to note that on the present record, a sentence of 196 months is appropriate under 18 U.S.C. § 3553(a), the Court expresses no opinion on the merit of a request for a further reduction of defendant's sentence under Section 404 of the FSA-2018.

participated in several courses and programs, including a drug treatment program.   Defendant had a disciplinary incident in April of 2019 for possession of drugs or alcohol, but he has not received any infractions since then.   In addition, although defendant received a firearm enhancement, the government concedes that he does not appear to pose a danger to society upon release.   Defendant appears to have made significant progress toward rehabilitation.   On balance, the factors under Section 3553(a) support a reduced sentence of 196 months.

**IT IS THEREFORE ORDERED** that defendant's renewed <u>Motion For Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)</u> (Doc. #887) filed March 16, 2021 is **SUSTAINED in part**.  **The Court reduces defendant's sentence to 196 months in prison.   Except as modified above, all other terms and conditions of the <u>Judgment In A Criminal Case</u> (Doc. #472) filed August 26, 2011 shall remain in effect.   The Clerk is directed to forward a copy of this <u>Memorandum And Order</u> to the Office of the Federal Public Defender.**

Dated this 18th day of May, 2021 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge

-11-